OUTTEN v. ROYSTER GUANO CO.

THE NANNIE MAY.

(District Court, E. D. Virginia. June 28, 1919.)

1. WHARVES ⊚⇒20(3)—CRANE ON WHARF—LIABILITY FOR INJURY TO VESSEL.

A crane on a dock, so constructed that its boom would swing 38 feet over the navigable part of the river, being erected without lawful authority, *held* an unlawful obstruction to navigation, rendering owner liable for damage to vessel colliding, without fault, with the boom.

2. SALVAGE ⊚⇒32—RAISING SUNKEN VESSEL.

The owner of a vessel, sunk near wharf and constituting a menace to navigation, taking no steps to raise her, the owner of the wharf, raising her, may recover against her a reasonable amount therefor and the expenses in connection therewith.

In Admiralty. Two libels, one by L. A. Outten, master of the Nannie May, against the Royster Guano Company, and the other by the Royster Guano Company against the Nannie May, to recover damages for injury received in collision and for salvage services. Decree for libelants.

G. M. Dillard, of Norfolk, Va., for Royster Guano Co.
Cadwallader J. Collins, of Norfolk, Va., for the Nannie May.

WADDILL, District Judge. These two cases—the first-named a suit in personam against the Royster Guano Company, to recover for damages sustained in collision between the libelant's sloop and a crane extending from the wharf of the respondent company in the waters of the Elizabeth river, Norfolk, Va., and the second a proceeding in rem by the Royster Guano Company against the Nannie May to recover for salvage services rendered in connection with raising her—were by consent of parties, heard together.

The first case briefly is that on the 7th of February, 1919, the schooner Nannie May, propelled in part by sail and in part by gasoline, anchored at the wharf of the respondent to take on part of a cargo of fertilizer for transportation to the eastern shore of Virginia. She remained at the wharf several hours, and left about 5 o'clock p. m. At the time a large barge, some 200 to 250 feet long, was also made fast to the wharf, below and to the northward of the Nannie May. On the wharf was maintained a crane or derrick, so constructed that its boom would swing around and outward from the wharf over the navigable part of the river, a distance of 38 feet. This boom, at the time of the collision with the Nannie May, was extended from the wharf across and over the barge, about amidship, and protruded out-

ward from the outer side of the barge over the stream for some 12 feet. The crane was not then in operation while its boom was thus projecting over the stream, and the Nannie May, upon moving out from her berth forward of the barge, under the influence of the strong ebb tide, swung in close proximity to the barge, and her main mast came in contact with the boom with such force that she was thereby immediately sunk.

The owner of the sloop took no steps to raise her, and, it being a menace to navigation at the point where it was submerged, the Royster Guano Company employed a wrecking company to raise and take her to a marine railway for repairs. For services rendered and money paid out in connection with repairs sufficient to float the Nannie May, the respondent filed its libel for salvage.

The navigators of the sloop claim that she was navigated in a proper and seamanlike manner, and the accident was brought about by no fault on her part, or that of her navigators, officers, or crew, and was caused by the obstruction of the fairway by the extension of the crane aforesaid over the stream. The Royster Guano Company contends that the collision was brought about by the failure of the owner and master of the sloop to navigate with ordinary care, caution, and skill, and without fault on its part, and denies that the crane or derrick was an unlawful obstruction to navigation in said stream.

[1] Considerable testimony was adduced by the parties to support their respective contentions, and the court's conclusion, after mature consideration thereof, is (1) that the crane in question constituted an unlawful obstruction to the navigable capacity of the stream over which it swung; (2) that the same was erected there without lawful authority; and (3) that the navigator of the Nannie May was not chargeable with fault in coming into collision with the boom of the crane, under the circumstances under which the collision occurred.

[2] Considering the second case for salvage for raising the Nannie May, the court's conclusion is that the libelant, the Royster Guano Company, is entitled to recover against the said sloop, assuming the owners thereof elect to take her, a reasonable amount for raising her and the expenses incurred in connection therewith, the same not to exceed the value of the vessel in its raised condition; and, upon the owners electing to take the said Nannie May, they must credit, on any award of damages they may recover for sinking her, the difference between her raised value and the allowance for salvage, as aforesaid.

It follows from what has been said that in the joint cases a decree will be entered, first, awarding, in the in personam proceeding against the Royster Guano Company, the amount of damage sustained by the libelant for the sinking of the vessel; and, secondly, in the salvage proceeding, against the Nannie May in her present condition, for the amount of the costs and expenses incurred in salving her as aforesaid; and with a view of reaching a conclusion as to what the parties are respectively entitled to receive, these cases will be referred to a commissioner, with instructions to make full inquiry and report the rights of the parties, respectively, and the damages to which they are entitled.